1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

COMPUTERIZED SCREENING, INC.,  )        3:09-CV-00465-RCJ-(RAM)
                              )
            Plaintiff,         )
                              )        **ORDER**
v.                             )
                              )
LIFECLINIC INTERNATIONAL, INC.,)
                              )
            Defendant.         )
_____)

    This is a patent infringement case concerning medical screening equipment.  After knowing of each other's products for years and failing to negotiate license agreements, Plaintiff Computerized Screening, Inc. ("Plaintiff") filed suit against Defendant Lifeclinic International, Inc. ("Defendant") claiming patent infringement. Before the Court is Defendant's Motion to Stay Litigation Pending the Outcome of Reexamination Proceedings (#24).  Plaintiff filed an opposition (#27) and Defendant filed a reply (#28).   The parties also filed supplemental briefings (#29, 30, 31).  The Court held a hearing on August 2, 2010.  After considering this motion, subsequent filings from both parties, and oral argument, the Court issues the following order.  IT IS HEREBY ORDERED that Defendant's Motion to Stay Litigation Pending the Outcome of Reexamination Proceedings (#24) is GRANTED IN PART AND DENIED IN PART.

### I. BACKGROUND

    Plaintiff is a Nevada corporation while Defendant is a Maryland corporation.  (Comp. (#1) 1:21–25). These parties have competed in the same health screening market for years.

1  (*See* Pl.'s Opp. (#27) 5:22–28).  It was not, however, until Defendant produced a prototype

2  of its LC 600 with internet connectivity that the parties became direct competitors.  (*Id.* at

3  5:5–7).  Plaintiff claims LC's 435, 500, and 600 machines infringe on its following two patents:

4  1) United States Patent No. 6,428,124 ("124"), and 2) United States Patent No. 6,692,436

5  ("436").  (*Id.* at 5:11–14).  These machines were allegedly released into the marketplace in

6  2006, 2005, and 2008 respectively.  (*Id.* at 5:23–25).

7      Beginning in 2006, these parties began negotiations for licenses and other business

8  agreements.  (*Id.* at 6:3–4).  During and after this period of negotiations, Defendant continued

9  to release more advanced machines culminating in the anticipated release of the LC 600.

10  (*See Id.* at 6:10, 6:25–26).  Defendant's president, Philander Claxton, declared the LC 600

11  was released into the marketplace in 2008.  (Def.'s Mot. to Stay (#27) Ex. 7, 2:7).  However,

12  Plaintiff states it first learned about Defendant's 600 machine at a trade show in February

13  2009 and that Defendant's own website declares it will be available to the general public

14  beginning April 2010.  (*Id.* at 7:25–27).  It was at this trade show where Plaintiff first noted

15  similarities between the LC 600 and its own internet connected model 9000.  (*Id.* at 6:22–24).

16  Following the trade show, negotiations once again ensued between the parties but ultimately

17  failed, provoking this litigation in August 2009.  (*Id.* at 7:13–20).

18      On December 17, 2009, Defendant submitted *ex parte* reexamination requests to the

19  U.S. Patent Trade Office ("PTO") for both Plaintiff's patents-in-suit, 124 and 436.  (Def.'s Mot.

20  to Stay (#24) 4:7–9).  Defendant then submitted this Motion to Stay on February 18, 2010.

21  (*Id.* at 1).  The PTO subsequently granted review of all claims of both patents on March 15,

22  2010 and April 6, 2010, respectively.  (Def.'s Supp. (#29) 2:4–8).

## II. LEGAL STANDARD

24      "Courts have the inherent power to manage their dockets and stay proceedings,

25  including the authority to order a stay pending conclusion of a PTO reexamination."  *Ethicon*

26  *v. Quigg*, 849 F.2d 1422, 1426–1427 (Fed. Cir. 1988) (internal citation omitted).  The Court

27  has no obligation to stay federal proceedings pending a PTO reexamination.  *See Medichem,*

28  *S.A. v. Rolabo, S.L.*, 353 F.3d 928, 936 (Fed. Cir. 2004) ("[O]n remand, a stay of proceedings

2

in the district court pending the outcome of the parallel proceedings in the PTO remains an option within the district court's discretion."). However, there is a trend toward granting motions to stay proceedings pending reexaminations. *See ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

"A stay is particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were cancelled in the reexamination, would eliminate the need to try the infringement issue." *In re Cygnus Telecomms Tech., LLC Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005). Additionally, the Federal Circuit has found that the reexamination of a patent's validity could "eliminate trial of that issue (when the claim is cancelled) or to facilitate trial of the issue by providing a district court with the expert view of the PTO (when the claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

When considering a motion to stay proceedings, a court looks at factors comprising a three-part test: 1) whether a stay would unduly prejudice the non-moving party or allow for a tactical advantage for the moving party; 2) whether a stay will simplify the issues in the case at trial; and 3) whether discovery has commenced, or is almost complete and whether a trial date has been set. *See Wireless Spectrum Techs., v. Motorola Corp.*, 57 U.S.P.Q. 2d 1662, 1663 (N.D. Ill. 2001).

### III. ANALYSIS

While both parties recognize the Court's complete discretion in granting a motion to stay federal proceedings, they disagree as to whether the Court should do so. As previously outlined, the Court reviews facts relevant to the three-part test in deciding whether to grant Defendant's motion. Plaintiff asserts that Defendant has filed this motion as another means of delay. Additionally, Plaintiff argues that it would be unfair to delay this litigation since the PTO reexamination process is indefinite and could take up to 31 months to complete. (Pl.'s Opp. (#27) 11:4-7). Furthermore, Plaintiff asserts that the PTO reexamination and trial processes employ distinct standards of review for patent infringement cases. Defendant

counters that the Court's own decision will benefit from the PTO's reexamination findings because the PTO's decision will simplify the issues before the Court and provide the PTO's expert analysis.

**A.** **Plaintiff will not Face Undue Prejudice if Proceedings are Stayed but Discovery is Allowed to Proceed**

Should the Court decide to stay federal proceedings pending the outcome of the PTO reexamination process, Plaintiff would not be denied legal rights or face undue prejudice. Defendant reminds the Court that the PTO is required by statute to conduct reexaminations with "special dispatch." *See* 35 U.S.C. § 305. "While Plaintiff is rightfully concerned that a reexamination will significantly delay the prosecution of its patent infringement claims, the delay inherent in the reexamination process 'does not constitute, by itself, undue prejudice.'" *SKF Condition Monitoring, Inc. v. SAT Corp.*, No. 07CV1116, 2008 WL 706851, at *6 (S.D. Cal. Feb. 27, 2008) (citing *Photoflex Products, Inc. v. Circa 3 LLC*, No. C 04-03715, 2006 WL 1440363 at *2 (N.D. Cal. May 24, 2006)). Defendant further contends that Plaintiff knew of Defendant's competing products as early as 2006 but waited until 2009 to file suit. (Def.'s Mot. to Stay (#24) 12:2–4). Therefore, Plaintiff would not face substantially more prejudice than it has already experienced by its own delay, and which has expanded beyond the time frame of a typical PTO reexamination. (*Id.* at 11:27–28).

Plaintiff counters that it did not know of the LC 600's true capabilities until February 2009 but that Defendant knew and could have requested a PTO reexamination of the patents-in-suit before Plaintiff even filed suit. In addition, Plaintiff asserts that Defendant has a history of using delay tactics, which Plaintiff discovered during unsuccessful sessions of negotiations beginning in 2006 and culminating in this litigation. Plaintiff argues this motion is just another delay tactic Defendant will use to infiltrate the health screening market with its LC 600 machine. If litigation is stayed, this delay could mean unmeasurable damages for the Plaintiff if Defendant were to dominate Plaintiff's current market with this new product. It is unknown how long exactly a PTO reexamination could take to complete, but the average is 25.4 months, reaching upwards to 31 months. (Pl.'s Opp. (#27) 11:4–7).

4

1    Defendant reiterates the statutory requirement that the PTO complete a reexamination

2  with special dispatch, with the medium pendency of such examination proceeding at only 19.8

3  months.  *See* 35 U.S.C. § 305; (Def.'s Mot. to Stay (#24) 11:26–27).  This delay itself is not

4  prejudicial.  But, the Court is mindful of the need to avoid unnecessary delay.  Therefore, the

5  Court will allow discovery to go forward while the PTO's reexamination is pending while

6  staying the litigation in all other respects.  The factor of prejudice due to delay counsels

7  against staying litigation, but this factor is mitigated by allowing discovery to proceed.

8    **B.    A Stay will Simplify or Completely Dissolve Issues for Trial**

9    By granting a stay and allowing the PTO to determine which claims of the patents-in-

10  suit are still valid for trial, the Court promotes simplification of the issues, cutting down on

11  discovery and resources spent.  As Defendant indicates, the Federal Circuit views the PTO

12  reexamination process as a way to eliminate or facilitate trial, and the PTO can provide the

13  district court with an expert view when a claim survives the reexamination proceedings.  *See*

14  *Gould*, 705 F.2d at 1342.  Defendant asserts that the patents-in-suit relate to voluminous prior

15  art and claims that would require massive discovery and briefing to prepare for a *Markman*

16  hearing.[1]  Because of the complex and technical nature of these claims, Defendant argues

17  many courts prefer to postpone litigation until the PTO rules on patents-in-suit, especially

18  when reexamination requests rely on prior art references not previously considered by the

19  PTO when it first granted the patents-in-suit.  *See Broadcast Innovation, LLC v. Charter*

20  *Commc'ns, Inc.*, No. 03-CV-2223, 2006 WL 1897165, at *7 (D. Colo. July 11, 2006).  Finally,

21  Defendant concludes by imagining the potential awkward situation if the Court were to find

22  opposite the PTO: "The risk of potentially inconsistent decisions between this Court and the

23

24    [1] Developed from a U.S. Supreme Court decision, a *Markman* hearing is required of a
25  judge in a patent infringement case to determine the validity of a patent claim:
   "Patent construction in particular 'is a special occupation, requiring, like all others, special
26  training and practice. The judge, from his training and discipline, is more likely to give a proper
   interpretation to such instruments than a jury; and he is, therefore, more likely to be right, in
27  performing such a duty, than a jury can be expected to be.'" *Markman v. Westview*
   *Instruments, Inc.*, 517 U.S. 370, 388–389 (1996) (citing *Parker v. Hulme*, 18 F. Cas. 1138,
28  1140(C.C.E.D. Pa. 1849) (No. 10,740)).

PTO would not only cause Defendant significant harm . . . but it also would be a tremendous waste of time and resources of all those involved." *Ricoh Co. v. Aeroflex Inc.*, Nos. C03-04669, C03-02289, 2006 WL 3708069, at *5 (N.D. Cal. Dec. 14, 2006). Nevertheless, regardless of the outcome of the PTO reexamination, "the district court can benefit from the PTO's expertise, analysis of the patent claims, and evaluation of the relevant prior art." *Synthes (USA) v. G.M. dos Reis Jr. Ind. Com. de Equip. Medico*, No. 07-CV-309, 2010 WL 669733, at *3 (S.D. Cal. Feb. 22, 2010) (*citing Ethicon*, 849 F.2d at 1428).

Plaintiff argues that the reexamination procedure is used not only to avoid duplication. *See Ethicon*, 849 F.2d at 1427. Both the PTO and court use different standards to evaluate the validity of a patent infringement claim: "The awkwardness presumed to result if the PTO and the court reached different conclusions is more apparent than real. The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions."[2]  *Id.* at 1428. Plaintiff argues there is no guarantee a PTO reexamination will simplify or cancel claims in the disputed patents. According to PTO data, there is only a 13% possibility that all claims of a certain patent will be completely cancelled. (Pl.'s Opp. (#27) 16:23–24).

Defendant also presents a statistical argument claiming there is a 74% likelihood a reexamination request will result in amendment or cancellation of the claims. (Def.'s Mot. (#24)

---

[2] While discussing the reexamination process, 35 U.S.C. § 305 states, "the patent owner will be permitted to propose any amendment to his patent and a new claim or claims thereto, in order to distinguish the invention as claimed from the prior art cited under the provisions of section 301 of this title, or in response to a decision adverse to the claim of patentability of a claim of a patent." Plaintiff cites certain limitations to a PTO reexamination such as the inability to cross-examine or depose relevant witnesses. (*See* Pl.'s Opp. (#27) 14:16–18). Plaintiff further cites from a case where the court found "re-examination proceedings are not fully open to the public or truly adversarial . . . the plaintiffs have no right to be heard unless they file their own requests for re-examination, which could generate more delay." *In re Columbia University Patent Litigation*, 330 F.Supp.2d 12, 16 (D. Mass. 2004). Defendant counters that the PTO has the expertise to consider voluminous prior art references, resolve prior art rejections, and narrow the claims of the patents-in-suit. (*See* Def.'s Mot. to Stay (#24) 3:15–17). Defendant uses the same case to prove the merit of these arguments and add that a PTO examination could change the language of the claims, which would critically change the face of the current litigation. *See In re Columbia*, 330 F. Supp. 2d 12, 16.

10:6, n.2).  Defendant warns of expending unnecessary amounts of resources when the PTO may ultimately cancel or amend Plaintiff's patents-in-suit.  Plaintiff vaguely argues no resources would be wasted since the court and PTO employ different standards of review.

The Court recognizes the advantage it may gain in allowing the PTO to first reexamine the validity of Plaintiff's patent claims.  This factor favors a stay in litigation.

### C.  Discovery has not Commenced and No Trial Date has been Set

Plaintiff concedes this litigation is yet in its youth, but reminds the Court of resources it expended to fight Defendant's motion to dismiss based on lack of personal jurisdiction.  By attempting to reargue its claim of prejudice if litigation is stayed, Plaintiff fails to present any further argument against this final prong of the test.

Defendant points out that no discovery has been conducted yet, including no initial disclosures, no service of any document requests, interrogatories, or requests for admission, and no depositions set.  Further, no trial date has been set.  Because of these factors, Defendant argues "the fact that this case is still in the early stages and the parties have not yet conducted 'significant discovery' or invested 'substantial expense' into the litigation weighs in favor of granting a stay." *Photoflex Prods.*, 2006 WL 1440363, at *1. The Court agrees.

The three-part test favors granting a stay.  However, to avoid unnecessary delay in this litigation, the Court will allow discovery to proceed.

### IV. Conclusion

Accordingly, IT IS ORDERED that Defendant's Motion to Stay Litigation Pending the Outcome of Reexamination Proceedings (#24) is GRANTED IN PART AND DENIED IN PART.

///

///

///

7

IT IS FURTHER ORDERED that this litigation is stayed pending the Patent and Trademark Office's re-examination except that discovery shall proceed.

IT IS SO ORDERED.

DATED: This 16TH day of August, 2010.


_____
Robert C. Jones
UNITED STATES DISTRICT JUDGE

8